IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALERT 360 OPCO, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 24-CV-316-MTS |
| | ) |
| LA ALARMS LLC, et al., | ) |
| | ) |
| Defendants. | ) |

### OPINION AND ORDER

Before the Court is Defendant Gary Hand's Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction and Memorandum of Law in Support. (Docket No. 32). Upon the Court's review and consideration of the parties' filings and arguments at the hearings, the Motion is hereby **GRANTED**.

### Background and Procedural History

Plaintiff Alert 360 Opco, Inc. ("Plaintiff"), filed its Complaint on July 9, 2024, alleging various claims against Defendants LA Alarms LLC and Gary Hand. (Docket No. 2). On September 19, 2024, Plaintiff filed an Amended Complaint, including claims of (1) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) common law trademark infringement; (3) common law unfair competition; (4) violation of the Oklahoma Deceptive Trade Practices Act, Okla. Stat. tit. 78, § 54(A); (5) common law malicious/tortious interference with a contract; (6) negligent supervision and training; and (7) breach of contract.[1] (Docket No. 26). All the claims are alleged against Defendant Hand except for negligent supervision and training and breach of contract. *Id.*

---

[1] Defendant Hand previously filed a Motion to Dismiss (Docket No. 22), which the Court deemed moot due to the filing of the Amended Complaint. (Docket No. 27).

According to the Amended Complaint, Plaintiff, a provider of customized security and home automation solutions, is a Delaware corporation with its principal place of business in Oklahoma. *Id.* at 2, 3. It provides services to customers in Oklahoma and nineteen (19) other states. *Id.* at 3. Defendant LA Alarms, one of Plaintiff's competitors, is a Louisiana company with its principal place of business in Louisiana. *Id.* Defendant Hand, a resident of Louisiana, is the owner and Vice President of Sales of LA Alarms LLC. *Id.*

Plaintiff alleges it entered into an Agreement to Purchase and Sell Assets ("Dealer Agreement") with Defendant LA Alarms, which included a forum selection clause, wherein Defendant LA Alarms submitted to the jurisdiction of this Court. *Id.* at 3–4; Docket No. 26-1. Although Plaintiff concedes in the Amended Complaint that Defendant Hand was not a signatory to the Dealer Agreement, it instead alleges that he "was intimately involved in the establishment of the dealer relationship between Alert 360 and LA Alarms and the day to day execution of the Dealer Agreement." (Docket No. 26 at 4). Plaintiff also asserts that Defendant Hand was heavily involved with payment disputes arising from the Dealer Agreement and was a signatory to a Payment Agreement, which expressly listed Plaintiff's address in Oklahoma for the payee's information. *Id.* at 5; Docket No. 26-2.

According to Plaintiff, the Dealer Agreement provided Defendants access to its customers, allowing Defendants to target certain customers with deceptive sales practices. (Docket No. 26 at 4). Specifically, Plaintiff alleges Defendants misled many of its customers by advising them that: (1) Plaintiff was no longer in business; (2) Plaintiff was bankrupt; (3) Defendant LA Alarms was the manufacturer of Plaintiff's equipment; (4) Plaintiff changed its name to LA Alarms LLC; and (5) Defendant LA Alarms was required to upgrade Plaintiff's customers' security equipment

because it purchased Plaintiff, "so the alarm signals w[ould] no longer go to the police if the customer d[id] not replace the equipment." *Id.* at 1.

Based upon these actions, Plaintiff alleges Defendants "intentionally engaged in deceptive sales practices aimed to financially harm Alert 360, a citizen of Oklahoma, in Oklahoma, where the majority of Alert 360's financial holdings exist." *Id.* at 4. Moreover, Plaintiff maintains that Defendant Hand knew Plaintiff's center of operations and corporate headquarters were located in Oklahoma, and Defendants were "well aware" their deceptive sales practices would harm Plaintiff in Oklahoma. *Id.*

On October 3, 2024, Defendant Hand filed the instant motion seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2), or lack of personal jurisdiction. (Docket No. 32). Plaintiff filed its Response in Opposition to Defendant Gary Hand's Motion to Dismiss the Amended Complaint on October 24, 2024. (Docket No. 34). On November 7, 2024, Defendant Hand filed his Reply. (Docket No. 35). The Court held a hearing on the Motion on December 18, 2024. (Docket No. 37). At the hearing, the Court determined that supplemental briefing was required. *Id.* In accordance with the Court's instruction, Plaintiff filed its Supplemental Briefing in Opposition to Defendant Gary Hand's Motion to Dismiss the Amended Complaint (Docket No. 39) on January 10, 2025, and Defendant Hand filed his Response to Plaintiff's Supplemental Briefing (Docket No. 40) on January 21, 2025. The Court held another hearing on the matter on February 5, 2025. (Docket No. 42). Therefore, the matter is fully briefed and ripe for consideration.

### **Legal Standard**

Although a plaintiff bears the burden of establishing that a court has personal jurisdiction over the defendants, "the plaintiff need only make a prima facie showing of jurisdiction to defeat

[a] motion [to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)]." *Anderson Energy Grp. (Ohio), LLC v. Endeavor, Ohio, LLC*, No. 12-CV-430-GKF-TLW, 2013 WL 1910389, at *4 (N.D. Okla. May 8, 2013) (quoting *AST Sports Sci., Inc. v. CLF Dist. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008)); see *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1281 (10th Cir. 2020). As such, the court will accept the allegations in the plaintiff's complaint as true, with all factual disputes resolved in the plaintiff's favor. *Intercon Inc. v. Bell Atl. Internet Sols.*, 205 F.3d 1244, 1247 (10th Cir. 2000). In addition to the allegations made in the complaint, the plaintiff may attach affidavits or other written materials supporting personal jurisdiction. *Anderson Energy*, 2013 WL 1910389, at *4 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)). However, the plaintiff's allegations will be taken as true only "to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Nat'l Occupational Health Servs., Inc. v. Advanced Indus. Care*, 50 F. Supp. 2d 1111, 1116 (N.D. Okla. 1998) (quoting *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988)).

"Federal courts may exercise personal jurisdiction over a defendant 'who is subject to the jurisdiction of a court of general jurisdiction where the district court is located.'" *Sanchez estate of Standage v. White Cty. Med. Ctr.*, 730 F. App'x 656, 658 (quoting Fed. R. Civ. P. 4(k)(1)(A)). As such, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *XMission, L.C. v. PureHealth Research*, 105 F.4th 1300, 1307 (10th Cir. 2024) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). Oklahoma's long-arm statute is consistent with the United States Constitution. Okla. Stat. tit. 12, § 2004(F). Therefore, the relevant inquiry

is "whether the United States Constitution places any limits on Oklahoma's ability to exercise jurisdiction." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013). For a court to exercise personal jurisdiction in accordance with constitutional due process, the nonresident defendant must have "minimum contacts" with the forum state and the court's exercise of jurisdiction must not offend "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)); *see Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

### Discussion

#### A. Minimum Contacts Analysis

The extent of a defendant's minimum contacts determines whether a court may exercise general or specific personal jurisdiction. A court may exercise general jurisdiction over a defendant if the party has "continuous and systematic general business contacts with the forum state[.]" *Trujillo v. Williams*, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006) (citing *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 415 (1984)). Typically, courts make three inquiries to determine whether exercise of specific jurisdiction is proper: "(1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." *Newsome*, 722 F.3d at 1264 (citing *Dudnikov*, 514 F.3d at 1070).

"The substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 112 (1987). As for tort-based lawsuits specifically, "'purposeful direction' has three elements: '(a)

an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state . . . .'" *Newsome*, 722 F.3d at 1264–65 (quoting *Dudnikov*, 514 F.3d at 1072).

The focus in determining whether the plaintiff's injury arose from the purposefully directed activities is "whether the plaintiff can establish that the claimed injury resulted from the defendant's forum-related activities." *Id.* at 1271. Finally, if the plaintiff can show that the alleged injury arose out of the defendant's purposefully directed activities, "the burden shifts to the defendant to demonstrate that exercising personal jurisdiction would nonetheless 'offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Dudnikov*, 514 F.3d at 1080). To do so, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). In making such a case, the court may consider the following:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings*, 149 F.3d at 1095. Importantly, "the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005).

Plaintiff does not argue that the Court has general jurisdiction over Defendant Hand, *i.e.*, he has "continuous and systematic" contacts with Oklahoma. (*See* Docket No. 34). Therefore, the Court's focus is solely on whether it may exercise specific personal jurisdiction over Defendant Hand. To meet its *prima facie* showing of specific personal jurisdiction over Defendant Hand, Plaintiff relies solely on the allegations of the Amended Complaint, including Defendant Hand's

6

involvement with the Dealer Agreement and later ownership of Defendant LA Alarms, his intentional conduct in the form of deceptive sales practices with knowledge that Plaintiff operated in Oklahoma, and knowledge that any financial injuries to Plaintiff would occur in Oklahoma. (Docket No. 26 at 3–4). In support of such knowledge, Plaintiff relies upon Defendant Hand's execution of a Payment Agreement, which listed Plaintiff's Oklahoma address as the payee's information. *Id.* at 5.

Defendant Hand, however, attached an affidavit to his Motion, wherein he states the following: (1) he is a resident of the State of Louisiana; (2) he has no meaningful contacts, ties, or relations to the State of Oklahoma; (3) he has never done business in Oklahoma in his individual capacity; (4) at all pertinent times to the lawsuit he was either an employee or owner of Defendant LA Alarms and worked at its office in Louisiana; (5) he was not a party to the Dealer Agreement, was not the owner of Defendant LA Alarms when the Agreement was executed, and has not entered into any agreements with Plaintiff in his individual capacity; and (6) he did not conduct or direct that activity be conducted in Oklahoma. (Docket Nos. 32 at 1–2, 32-1). He argues that the allegations of Plaintiff's Amended Complaint fail to establish sufficient minimum contacts for the exercise of specific personal jurisdiction, as his alleged activities were not purposefully directed at Oklahoma, the alleged injuries did not arise from such activities, and exercising jurisdiction would offend traditional notions of fair play and substantial justice. (Docket No. 32 at 3–7).

Plaintiff has failed to make a *prima facie* showing of specific personal jurisdiction to defeat Defendant Hand's Motion to Dismiss. The allegations of the Amended Complaint do not establish sufficient minimum contacts between Defendant Hand and Oklahoma, as Plaintiff has failed to show that Defendant Hand's activities were "purposefully directed" at Oklahoma. As previously noted herein, "'purposeful direction' has three elements: '(a) an intentional action . . . that was (b)

expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state . . . .'" *Newsome*, 722 F.3d at 1264–65 (quoting *Dudnikov*, 514 F.3d at 1072). Here, although Plaintiff alleges intentional conduct by Defendant Hand in the form of deceptive sales practices and misrepresentations to customers, there are no allegations in the Amended Complaint that Defendant Hand engaged in any such activities in Oklahoma, traveled to Oklahoma, or otherwise communicated with anyone in Oklahoma. Instead, Plaintiff primarily relies upon Defendant Hand's alleged knowledge that its operations and headquarters are in Oklahoma, evidenced by his signature on the Payment Agreement, and therefore any alleged intentional activities by Defendant Hand, even if conducted in Louisiana, were "expressly aimed" at Oklahoma with the knowledge that said activities would cause financial injuries there.

There is no question that Plaintiff's allegations of intentional action by Defendant Hand in the form of deceptive sales practices and misrepresentations to customers meets the first requirement for a showing of purposeful direction. For the second and third requirements, Plaintiff relies on *Newsome v. Gallacher*, 722 F.3d 1257 (10th Cir. 2013), arguing that Hand's alleged knowledge that Plaintiff operated in Oklahoma was enough to establish that his intentional action was "expressly aimed" at Oklahoma and that any injuries would be felt there. In *Newsome*, the Tenth Circuit determined that Oklahoma was the focal point of a conspiracy by defendants located in Canada based upon their knowledge that the plaintiff operated exclusively in Oklahoma. *Id.* at 1269. Further, the Court determined that with such knowledge, the inference could be drawn that the defendants knew the injury to plaintiff would be felt in Oklahoma. *Id.* However, Plaintiff's case differs from *Newsome*. Here, Defendant Hand's intentional actions were directed at Plaintiff's customers outside of Oklahoma, and Plaintiff does not exclusively operate in Oklahoma, as it provides services to customers in at least nineteen (19) other states. (Docket No. 26 at 3, 11).

Thus, while Defendant Hand may have known Plaintiff was located in Oklahoma, his activities were directed at customers in Plaintiff's service areas outside of Oklahoma.

Additionally, general allegations of Defendant Hand's knowledge through the Payment Agreement do not establish the knowledge necessary to meet the elements for "purposefully directed" activity. *See Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178 (10th Cir. 2014) (finding plaintiff's allegations that defendant knew it was a Utah corporation and that documents identified an address for plaintiff in Utah did not establish personal jurisdiction over defendant, as personal jurisdiction is based on a defendant's contact with the forum, not plaintiff's contact with defendant and the forum) (citing *Walden*, 571 U.S. at 285). Moreover, there are no allegations by Plaintiff that Defendant Hand ever traveled to Oklahoma or that he "expressly aimed" any communications at Oklahoma. *See DCA Servs., Inc. v. Commc'ns III, Inc.*, Case No. CIV-15-256-D, 2016 WL 815329 (W.D. Okla. Feb. 29, 2016) (finding plaintiff failed to carry its burden of establishing minimum contacts with Oklahoma by an individual defendant, acting on behalf of corporate defendants, when he allegedly negotiated a plan for payments due to plaintiff through numerous telephone conferences and e-mails to plaintiff with the knowledge that plaintiff's agents and representatives were in Oklahoma); *Low v. OMNI Life Sci., Inc.*, Case No. CIV-18-305-SLP, 2019 WL 3242726 (W.D. Okla. July 17, 2019) (finding plaintiff failed to establish minimum contacts to exercise personal jurisdiction over an individual defendant in Oklahoma when the defendant never traveled to Oklahoma but allegedly sent five false communications with deceptive statements requesting payment from plaintiff in Oklahoma).

Accordingly, the Court finds Plaintiff has failed to make a *prima facie* showing that Defendant Hand's activities were purposefully directed at Oklahoma. Thus, there is no need for the Court to consider the remaining inquiries—whether the alleged injury arose from such

purposefully directed activities or whether exercising personal jurisdiction over Defendant Hand is reasonable.

### B. Alter Ego and Successor in Interest

Plaintiff, in its supplemental briefing, asserts that the Court has personal jurisdiction over Defendant Hand due to the forum selection clause found in the Dealer Agreement entered into by Plaintiff, Defendant LA Alarms, and Logan Hand. (Docket No. 40 at 1) (referencing Docket No. 26-1 at 36). However, Defendant Hand is not a signatory to the Dealer Agreement as he was not the owner of Defendant LA Alarms at the time; Defendant Hand's son, Logan Hand, was the owner and signatory. *Id.* Although Defendant Hand is a non-signatory to the Dealer Agreement, Plaintiff argues that, because he is the current owner, he is also Logan Hand's successor and therefore bound by the Dealer Agreement's terms, including the forum selection clause. (Docket No. 40 at 2) (citing Docket No. 32-1 at 2).

Defendant Hand responds that there is no Tenth Circuit precedence allowing a court to exercise personal jurisdiction over an individual defendant based solely on a forum selection clause in an agreement to which the individual is a non-signatory. (Docket No. 40 at 2). Further, Defendant Hand maintains that Plaintiff's argument fails even if caselaw regarding successor corporations and contractual waiver of personal jurisdiction apply to individual defendants. *Id.* at 2–3.

"[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Precision Fitness Equip. of Pompano Beach, Inc. v. Nautilus, Inc.*, Civil Action No. 08-cv-01228-

CMA-KLM, 2010 WL 551404, at *2 (D. Colo. Feb. 11, 2010) (quoting *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002); citing *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1132 (10th Cir. 1991)). Such an exercise includes imputing a corporation's waiver of personal jurisdiction, for example through a forum selection clause, to an alter ego or successor.[2] *Patin*, 294 F.3d at 654. Therefore, "those attempting to assert jurisdiction through contact imputation are, at bottom, asking the court 'to pierce the corporate veil.'" *Larada*, 2023 WL 2043300, at *13 (internal citation omitted); *see Patin*, 294 F.3d at 654 ("[I]mputing a corporation's consent to personal jurisdiction to its individual alter ego is consistent with the underlying rationale justifying piercing of the corporate veil."). Moreover, "imputing a predecessor corporation's waiver of personal jurisdiction to its successor corporation when the successor is a 'mere continuation' of the predecessor is also consistent with the principles underlying this exception to the general rule against successor liability." *Patin*, 294 F.3d at 654; *see Hetronic*, 10 F.4th 1016.

The general rule in Oklahoma is that a corporation is separate and distinct from the individuals acting on behalf of the corporation. *Phoenix Energy Mktg., Inc. v. Chase Oil Corp.*, Case No. 16-CV-0681-CVE-JFJ, 2017 WL 6397492, at *4 (N.D. Okla. Dec. 14, 2017) (citing *Fanning v. Brown*, 85 P.3d 841, 847 (Okla. 2004)); *see White Oak Glob. Advisors LLC v. Weder*, Case No. CIV-17-0756-J, 2020 WL 13169686, at *1–2 (W.D. Okla. Apr. 10, 2020). However,

---

[2] A review of the caselaw suggests that "successor" or "successor in interest" is oftentimes used to refer to a corporate entity taking over assets of a predecessor corporate entity. *See Larada Scis., Inc. v. Pediatric Hair Sols. Corp.*, Case No. 2:18-cv-00551-RJS-JCB, 2023 WL 2043300, at *13 (D. Utah Feb. 16, 2023); *Hetronic Int'l, Inc. v. Hetronic Ger. GmbH*, 10 F.4th 1016, 1029 (10th Cir. 2021). The alter ego theory appears to mainly refer to two defendants, either corporate entities or an individual and corporate entity, being the "alter ego" of the other. Although Plaintiff used the term successor, the Court finds the use of the term alter ego is more appropriate in the context of this case.

"Oklahoma has long recognized the doctrine of disregarding the corporate entity in certain circumstances. Courts may disregard the corporate entity and hold stockholders personally liable for corporate obligations or corporate conduct under the legal doctrines of fraud, alter ego and when necessary to protect the rights of third persons and accomplish justice . . . ." *Fanning*, 85 P.3d at 847 (citing *Frazier v. Bryan Mem'l Hosp. Auth.*, 775 P.2d 281, 288 (Okla. 1989)). Although Oklahoma allows for courts to pierce the corporate veil under certain circumstances, such a remedy is extraordinary and should be used sparingly. *Puckett v. Cornelson*, 897 P.2d 1154 (Okla. Civ. App. 1995).

Importantly, "plaintiff's showing is less burdensome when attempting to impute contacts through an alter ego as opposed to establishing liability based on the actions of an alter ego. For instance, a sister district has rejected the position that 'the requirement to present a prima facie case [of jurisdiction] could be interpreted as a requirement to present a prima facie case of all elements of a veil-piercing or alter ego claim[.]'" *Larada*, 2023 WL 2043300, at *18 (quoting *Warad W., LLC v. Sorin CRM USA Inc.*, 119 F. Supp. 3d 1294, 1298 (D. Colo. 2015)).

Plaintiff has failed to sufficiently allege that the waiver of personal jurisdiction via the forum selection clause of the Dealer Agreement may be imputed to Defendant Hand for jurisdictional purposes. Plaintiff does not mention the terms "successor" or "alter ego" in its Amended Complaint. (*See* Docket No. 26). At most, Plaintiff alleged that Defendant Hand is the owner and Vice President of Sales of Defendant LA Alarms (Docket No. 26 at 3); "Defendant Gary Hand was intimately involved in the establishment of the dealer relationship between Alert 360 and LA Alarms and the day to day execution of the Dealer Agreement[,]" *id.* at 4; and "Defendant Gary Hand was also heavily involved in resolving payment disputes arising from the Dealer Agreement[,]" *id.* at 5. Such allegations are vague, general, and insufficient to suggest that

Defendant LA Alarms was a mere instrumentality of Defendant Hand or that there was a unity of interest and ownership. *See, e.g.*, *Larada*, 2023 WL 2043300. As such, the Court is unpersuaded by Plaintiff's argument that Logan Hand's waiver of personal jurisdiction is imputed to Defendant Hand as successor.

### C. The Fiduciary Shield Doctrine and the No Imputed Contacts Rule

Defendant Hand contends that, pursuant to the "no imputed contacts" rule, the Court cannot extend its exercise of personal jurisdiction over Defendant LA Alarms to him simply because he may be an agent or employee of LA Alarms. (Docket No. 32 at 8). Additionally, Defendant Hand asserts that the fiduciary shield doctrine may also prevent the Court from exercising jurisdiction over him as a corporate agent. *Id.* at 8–9.

Plaintiff argues that the "no imputed contacts" rule does not bar the Court from exercising personal jurisdiction over him because he himself committed tortious acts against Plaintiff. (Docket No. 34 at 7–8). As to the fiduciary shield doctrine, Plaintiff avers that the Oklahoma Supreme Court has not clearly adopted the doctrine and that it therefore does not prevent Defendant Hand from being subject to the Court's personal jurisdiction. *Id.* at 7.

According to the "no imputed contacts" rule, an employee's contacts "are not to be judged according to their employer's activities[.]" *Calder v. Jones*, 465 U.S. 783, 790 (1984). Nevertheless, employee status is not equivalent to complete insulation from jurisdiction. *Id.* "Each defendant's contacts with the forum State must be assessed individually." *Id.* (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). Therefore, "officers acting through the corporation, specifically directing their actions at the forum state even without visiting that state, can be subject to the jurisdiction of the forum state[.]" *PVD Phase II, LLC v. Silver Arch Capital Partners, LLC*,

13

Case No. CIV-19-0836-J, 2020 WL 5006038, at *4 (W.D. Okla. Feb. 26, 2020) (citing *Newsome*, 722 F.3d at 1269, 1276).

Plaintiff attempts to support its contention by referencing its allegation that Defendant Hand was directly involved in deceptive sales practices when he made certain representations to one of Plaintiff's former customers. (Docket No. 34 at 8) (citing Docket No. 26 at 11). However, those alleged contacts appear to have physically taken place in Louisiana. (*See* Docket No. 26 at 11). And, as stated above, Plaintiff's general allegation that Defendant Hand "intentionally engaged in deceptive sales practices [that he knew would] financially harm [Plaintiff,]" is insufficient and does not indicate Defendant Hand purposefully availed himself of the privilege of conducting activities in Oklahoma.

Pursuant to the fiduciary shield doctrine, "[j]urisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself, and jurisdiction over the individual officers and directors must be based on their individual contacts with the forum states." *Ten Mile Indus. Park. v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987). However, "employees of a corporation . . . may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation." *Application to Enforce Admin. Subpoenas Duces Tecum of the S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996). Regardless, the doctrine "only exists as a matter of state law[,]" and "Oklahoma has not yet adopted the fiduciary shield doctrine[.]" *Newsome*, 722 F.3d at 1275; *see Low*, 2019 WL 3242726, at *5. Thus, the Court declines to address the merits of Defendant Hand's fiduciary shield doctrine argument and refrains from predicting whether the doctrine applies in Oklahoma.

### Conclusion

For the reasons explained herein, the Court **GRANTS** Defendant Gary Hand's Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction and Memorandum of Law in Support. (Docket No. 32). Therefore, the claims against Defendant Hand are **DISMISSED**.

DATED this 10th day of March, 2025.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT